Mary **HUNGER**, Plaintiff,

v.

Cecil **ANDRUS** et al., Defendants.

Mrs. Beverly A. **LUSCH**, as Guardian ad litem of Allan Larvie, a Minor Child,

v.

Cecil **ANDRUS** et al., Defendants.

Civ. Nos. 78–3002, 78–3011.

United States District Court, D. South Dakota, C. D.

Sept. 14, 1979.

358

Anita Remerowski, Mission, S.D., Yvette Hall War Bonnett, South Dakota Legal Services, Batesland, S.D., for Mary Hunger.

R. P. Murley, Asst. U.S. Atty., Sioux Falls, S.D., for Cecil Andrus.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

The complaint in the Hunger case was filed January 12, 1978. Lusch, as guardian of Allan Larvie, filed a complaint February 24, 1978. Both actions dealt with the grant of a state right-of-way in August, 1975, over land owned by the United States in trust for the Rosebud Sioux Tribe.

Plaintiffs were occupants of the land in question under "Grants of Exchange Assignments" by the Tribal Land Enterprise of the Rosebud Sioux Tribe. Plaintiffs contend that this status required their consent before defendant could grant a right-of-way, and that they were entitled to compensation for the taking. Subsequent to the commencement of the actions, however, in February, 1979, both plaintiffs agreed to settlements of "Right-of-Way taking" with the Tribal Land Enterprises. Motions to Dismiss were filed by defendants on August 16, 1979, and after due consideration, the Court grants the Motions.

### FACTUAL BACKGROUND

In response to a growing problem of fractionalized ownership interests in allotted land, the Rosebud Sioux Tribe created an entity known as the Tribal Land Enterprise (TLE). Upon the conveyance of trust land by an individual owner to the United States in Trust for the Tribe, TLE was authorized to issue the grantor certificates of interest in TLE representing the market value of the land. These certificates could then be used to acquire an "assignment" of land under TLE control. The TLE would retain the certificates during the period the assignee remained in possession of the land.

The assignment was embodied in a document entitled "Grant of Exchange Assignment of Tribal Land", which contained a variety of provisions. For example, the land assigned was to be reassigned after the death of the assignee to such person designated by the assignee, or to his heirs, so long as they were a surviving spouse or child of assignee, or a member of the Tribe. On the other hand, the land could not be reassigned to anyone holding more than 640 acres, or could not be subdivided "into units too small for convenient management." The clause most important to the outcome of this case, however, states that "All timber, water rights, mineral rights, and the right to take easements on the land for public purposes are reserved to the Tribe, but grants of rights-of-way will be in ac-

cordance with regulations of the Department of the Interior and the laws pertaining thereto." These regulations, promulgated pursuant to 25 U.S.C. § 311, are found at 25 C.F.R. 161.

Plaintiff Hunger received a land assignment with a document containing these provisions on April 10, 1951. Plaintiff Lusch's assignment, also subject to these provisions, was issued on September 29, 1969.

In 1975, the South Dakota Department of Highways obtained a right-of-way, with the consent of the Rosebud Sioux Tribe, from the Bureau of Indian Affairs over plaintiffs' assignments. A consent to the taking was signed by plaintiff Hunger in May, 1974, and apparently the Superintendent of the Rosebud Agency consented on behalf of Allan Larvie pursuant to 25 C.F.R. § 161.-3(c). The State of South Dakota later, in August, 1975, paid the Rosebud Sioux Tribe $2,300 for right-of-way and damages to plaintiff Hunger's assignment, and $1,475 for right-of-way and damages to plaintiff Lusch's assignment. At the time of the filing of the complaints, the Tribe had made no payments to the plaintiffs.

On February 13, 1979, however, plaintiff Hunger signed an agreement, a "negotiated settlement of right-of-way taking and damages." By this, TLE agreed to purchase 33 TLE certificates of interest, for the 10.85 acres permanently taken from Hunger, and to pay her $899.25 for damages and improvements taken. On February 15, 1979, plaintiff Lusch, as guardian of Allan Larvie, signed a similar document, stating that she did "accept the proposed negotiated settlement" in which TLE purchased 124 TLE certificates for 9.68 acres permanently taken.

## ISSUES

I. Whether the consent of an assignment holder must be obtained prior to the granting of a right-of-way?

II. Whether the acceptance of settlements moots the issue of compensation as to plaintiffs?

## I.

█ In their Prayers for Relief, plaintiffs ask this Court to issue a declaratory judgment to the effect that the grant of an easement without the consent of an assignment holder violates 25 U.S.C. § 311 and 25 C.F.R. § 161, as well as constituting a breach of federal trust responsibility and 25 U.S.C. § 185 and the requirements of due process.

Plaintiff Hunger seems to claim that her consent was obtained through deception, and that she only signed the consent with the understanding that the compensation would be paid to her. Plaintiff Lusch claims that the giving of consent for Allan Larvie by the Superintendent, when he had a legal guardian, was invalid. For these arguments to succeed, the Court must, of course, find that consent was actually necessary, and this the Court is unable to do. Accordingly, the merits of the claims that those consents were invalid need not be reached.

First, plaintiffs attempt to bring their assignments within the definition of "individually owned land" at 25 C.F.R. § 161.-1(b). If this were indeed the case, consent of plaintiffs to the right-of-way would have been required under 25 C.F.R. § 161.3(b). The plaintiffs make no attempt to bring themselves under the first half of the definition, "land or any interest therein held in trust by the United States for the benefit of individual Indians", but instead seek to classify their assignments as "land or any interest therein held by individual Indians subject to Federal restrictions against alienation or encumbrance." They contend that their assignments are subject to such restrictions, saying this "is apparent from the language of the Grants of Exchange Assignments themselves."

The Assignments do, it is true, contain restrictions on alienation—the land may not be sold, it may only be reassigned to Tribal members and may not be reassigned to anyone who holds more than 640 acres, or reassigned in such a way that it is broken up into too many sub-units. But these are restrictions imposed by TLE, not the federal government, in furtherance of Tribal

goals to prevent the fractionalization of ownership interests that is prevalent with individual allotments. They are conditions placed by the Tribe on the use of its land, similar to restrictions any landowner might impose before conveying a limited interest in his land. The fact that the source of the Tribe's power to impose these restrictions might be ultimately found in federal law cannot make these "federal" restrictions within the meaning of the regulation.

Plaintiffs do not contest the fact that the title to this land is in the United States in trust for the Rosebud Sioux Tribe. This clearly brings it within the definition of "Tribal land" of 25 C.F.R. § 161.1(d)—"land or any interest therein, title to which is held by the United States in trust for a tribe." Under § 161.3(a) the only consent required before a right-of-way is granted over such land is the "prior written consent of the tribe", and that was done.

Plaintiffs contend that 25 C.F.R. § 162.5(a) supports their position. This regulation, also dealing with rights-of-way, does state that "Where an Indian has an interest in tribal land by virtue of a land use assignment, such consent shall be obtained from both the landholder of the assignment, and the Indian tribe." What plaintiffs neglect is that part 162 of the regulations deals only with roads of the Bureau of Indian Affairs, and has no application to the grant of a right-of-way to a state under part 161. Thus, this Court concludes that there was no need to obtain plaintiffs' consent prior to the granting of this right-of-way, and that the regulations were not violated. The fact that plaintiff Hunger's consent was obtained, apparently as a procedure to let her know what was happening, Deposition of Hubert McCloskey at 11, does not mean that her consent was necessary.

Plaintiffs' other contentions, that the grant of the right-of-way violated the federal government's trust responsibility and duty under 25 U.S.C. § 185, and deprived them of their rights under due process, similarly fail. Section 185 directs the government to take measures to protect Indians in the enjoyment of the land allotted to them. The land in this case, the foregoing discussion makes clear, is not allotted land, but Tribal land, which TLE has assigned to its members. As for the argument that this transaction breached the federal trust responsibility toward Indians, as well as their rights under due process, it must be observed that plaintiffs specifically gave the Tribe the right to take rights-of-way across the land, subject to federal regulations. These regulations appear to have been fully complied with, and at least in the case of plaintiff Hunger, even more than was required was done. There was no duty owed by the United States as trustee to do any more than obtain the consent of the Tribe.[1] Likewise, no due process rights of the plaintiffs could have been violated by failing to obtain their consent when they had already granted the Tribe the right to take easements.

## II

■ A different issue is presented by the second of plaintiffs' arguments, that they were entitled to compensation for the taking of the rights-of-way. By the terms of the Agreements signed by both plaintiffs in February, 1979, however, both accepted payments of money in "settlement" of taking and damages for these easements. No argument has been made that these Agreements are in any way invalid. In the absence of such a claim, this Court is of the opinion that it "should not attempt to decide the merits of the controversy where . . . [there has been] a settlement." *Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976). The fact that plaintiffs may not be "entirely" satisfied with this agreement cannot give this Court power to decide something that has already been resolved by the plaintiffs themselves.

---

1. *Seminole Nation v. United States*, 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942) on which plaintiffs chiefly rely, involves the misappropriation of funds intended for the benefit of individual tribal members. While this might conceivably have some bearing on the compensation issue, which this Court does not reach, it has no application to the question of whether the United States was required to obtain plaintiffs' consents.

An Order will therefore be entered dismissing plaintiffs' complaints.